# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| FREDERICK PALMER, | Civil Action No. 1:26-cv-4 |
| Plaintiff, | |
| v. | **DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT** |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | |
| Defendant. | |

Defendant International Business Machines Corporation ("IBM"), by and through its undersigned counsel and pursuant to Federal Rules of Civil Procedure 8 and 12, answers the Complaint of Plaintiff Frederick Palmer ("Plaintiff") as follows.

As permitted by Rule 8(d) of the Federal Rules of Civil Procedure, some defenses to the claim or claims made in the Complaint may be asserted alternatively and, in some cases, hypothetically. Such defenses are being asserted regardless of their consistency and are based both on legal and equitable grounds. As the facts of this litigation are fully developed through the discovery process, certain defenses may be abandoned, modified, or amended as permitted by, and consistent with, the Federal Rules of Civil Procedure and the Orders entered by the Court in this action.

<u>**FIRST DEFENSE**</u>

Defendant answers the correspondingly numbered paragraphs of the Complaint as follows:

<u>**INTRODUCTION**</u>

1. IBM admits that Plaintiff has worked in the technology industry, and that Plaintiff was employed by IBM on more than one occasion. IBM further admits, upon information and belief, that Plaintiff is 61 years of age. Except as specifically admitted, IBM denies the remaining allegations in Paragraph 1.

2. IBM admits it is a multinational technology corporation employing thousands of employees, including sales professionals. IBM further admits that, from on or about April 18, 2022 to July 23, 2025, Plaintiff worked remotely in IBM's Power Systems Global Sales organization, reporting in 2025 to IBM's Durham, North Carolina location. Except as specifically admitted, IBM denies the remaining allegations in Paragraph 2.

3. IBM admits that IBM maintained performance and incentive records for Plaintiff, including records reflecting 2023 attainment and quota figures, and that these records speak for themselves as to their contents. Except as specifically admitted, IBM denies the remaining allegations in Paragraph 3.

2

4. IBM admits that Plaintiff's performance records reflect management feedback in certain periods, including positive comments, and that these records speak for themselves as to their contents. Except as specifically admitted, IBM denies the remaining allegations in Paragraph 4.

5. IBM admits that Plaintiff received in August 2024 an equity award under its Long-Term Performance Plan.

6. IBM admits Plaintiff reported the death of a family member in March 2025. IBM lacks sufficient knowledge or information to admit or deny the remaining allegations contained in Paragraph 6 and therefore denies the same.

7. IBM admits Plaintiff communicated with his manager regarding his need for time away from work as needed following that event. Except as specifically admitted, IBM denies the remaining allegations in Paragraph 7.

8. IBM admits Plaintiff's manager expressed sympathy and supported Plaintiff taking time away from work. Except as specifically admitted, IBM denies the remaining allegations in Paragraph 8.

9. IBM admits, upon information and belief, that Plaintiff took time off work after the death of a family member in March 2025. IBM lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 9 and therefore denies the same.

10. IBM admits that, in May 2025, Plaintiff was placed on a Performance Improvement Plan ("PIP"), which was to continue through June 30, 2025. Except as specifically admitted, IBM denies the remaining allegations in Paragraph 10.

11. Denied.

12. IBM admits that the PIP was to run through June 30, 2025. Except as specifically admitted, IBM denies the remaining allegations in Paragraph 12.

13. IBM admits that it made a new product announcement on July 8, 2025. Except as specifically admitted, IBM denies the remaining allegations in Paragraph 13.

14. Denied.

15. Denied.

16. Denied.

**PARTIES**

17. IBM admits, upon information and belief, that Plaintiff is a citizen of the United States. IBM further admits that Plaintiff's last known address recorded with IBM was 717 Ashley Woods Dr., Gibsonville, NC 27249, in Guilford County, North Carolina. Except as specifically admitted, IBM denies the remaining allegations in Paragraph 17.

4

18. Admitted.

19. IBM admits it transacts business in North Carolina and maintains a facility in Durham, North Carolina, to which Plaintiff reported during his employment. Except as specifically admitted, IBM denies the remaining allegations in Paragraph 19.

## JURISDICTION & VENUE

20. IBM admits this Court has subject matter jurisdiction over Plaintiff's federal claim under 28 U.S.C. § 1331. IBM admits this Court may have diversity jurisdiction if the statutory requirements are satisfied. Except as specifically admitted, IBM denies the remaining allegations in Paragraph 20.

21. IBM admits this Court may exercise supplemental jurisdiction over state-law claims to the extent permitted by law. Except as specifically admitted, IBM denies the remaining allegations in Paragraph 21.

22. Admitted.

23. IBM admits venue is proper in this District to the extent the statutory requirements are satisfied. Except as specifically admitted, IBM denies the remaining allegations in Paragraph 23, including, but not limited to, any allegation of discriminatory employment actions.

5

24. IBM lacks knowledge sufficient to admit or deny Plaintiff's statute-of-limitations conclusions and therefore denies the allegations in Paragraph 24.

## FACTUAL ALLEGATIONS

25. IBM admits that Plaintiff has worked in the technology industry. IBM further admits, upon information and belief, that Plaintiff is 61 years of age. Except as specifically admitted, IBM denies the allegations in Paragraph 25.

26. IBM admits, upon information and belief, that Plaintiff received a Bachelor's degree in Accounting and worked for IBM from 1983 to 1992. Except as specifically admitted, IBM denies the allegations in Paragraph 26.

27. IBM admits, upon information and belief, that Plaintiff worked for IBM from 1983 to 1992. Except as specifically admitted, IBM denies the allegations in Paragraph 27.

28. IBM admits that, on or about April 18, 2022, Plaintiff rejoined IBM in a technical sales role aligned with Power-related offerings. Except as specifically admitted, IBM denies the allegations in Paragraph 28.

29. IBM admits it maintains internal records identifying Plaintiff's "service date" as October 5, 2013. Except as specifically admitted, IBM denies the allegations in Paragraph 29.

6

30. IBM admits its records reflected a retirement-eligibility date for Plaintiff of April 5, 2026. Except as specifically admitted, IBM denies the allegations in Paragraph 30.

31. IBM admits Plaintiff rejoined IBM on or about April 18, 2022. Except as specifically admitted, IBM denies the allegations in Paragraph 31.

32. IBM admits that quota and attainment metrics are among the performance measures used in certain sales roles. Except as specifically admitted, IBM denies the allegations in Paragraph 32.

33. IBM admits that it maintains performance reviews regarding Plaintiff and that these reviews speak for themselves as to their contents. Except as specifically admitted, IBM denies the allegations in Paragraph 33.

34. IBM admits that it maintains performance reviews regarding Plaintiff and that these reviews speak for themselves as to their contents. Except as specifically admitted, IBM denies the allegations in Paragraph 34.

35. IBM admits that it maintains performance reviews regarding Plaintiff and that these reviews speak for themselves as to their contents. Except as specifically admitted, IBM denies the allegations in Paragraph 35.

36. IBM admits that it maintains performance reviews regarding Plaintiff and that these reviews speak for themselves as to their contents. Except as specifically admitted, IBM denies the allegations in Paragraph 36.

7

37. IBM admits it maintains performance reviews regarding Plaintiff and that these reviews speak for themselves as to their contents. Except as specifically admitted, IBM denies the allegations in Paragraph 37.

38. IBM admits that Plaintiff's performance records reflect that Plaintiff was one of the first National Power technical sellers to sell a Power Virtual Server in the first half of 2023. Except as specifically admitted, IBM denies the allegations in Paragraph 38.

39. IBM admits its incentive statement records reflect that Plaintiff's achievement versus quota in 2023 were approximately as pleaded. Except as specifically admitted, IBM denies the allegations in Paragraph 39.

40. IBM admits that it maintains performance reviews regarding Plaintiff and that these reviews speak for themselves as to their contents. Except as specifically admitted, IBM denies the allegations in Paragraph 40.

41. IBM admits that Plaintiff received in August 2024 an equity award under its Long-Term Performance Plan. Except as specifically admitted, IBM denies the allegations in Paragraph 41.

42. IBM admits, upon information and belief, that Laura Smith, Vice President of National Market Technical Sales for IBM Technology, congratulated Plaintiff on his equity award. Except as specifically admitted, IBM denies the allegations in Paragraph 42.

43. IBM admits that it maintains performance reviews regarding Plaintiff and that these reviews speak for themselves as to their contents. Except as specifically admitted, IBM denies the allegations in Paragraph 43.

44. IBM admits that Plaintiff's performance records reflect that Plaintiff worked with clients in his assigned territory. Except as specifically admitted, IBM denies the allegations in Paragraph 44.

45. IBM lacks sufficient information or knowledge to admit or deny Plaintiff's allegations in Paragraph 45, which pertain to an unidentified client in an unspecified time period, and therefore deny the same.

46. IBM lacks sufficient information or knowledge to admit or deny Plaintiff's allegations in Paragraph 46, which pertain to an unidentified client in an unspecified time period, and therefore deny the same.

47. IBM lacks sufficient information or knowledge to admit or deny Plaintiff's allegations in Paragraph 47, which pertain to an unidentified client in an unspecified time period, and therefore deny the same.

48. IBM admits IBM maintained sales and incentive records reflecting that Plaintiff booked sales revenue in December 2023 and that these records speak for themselves as to their contents. Except as specifically admitted, IBM denies the allegations in Paragraph 48.

9

49. IBM admits that it made organizational changes to its sales organization, including changes in assigned territories and sales plans, which took effect in 2024. Except as specifically admitted, IBM denies the allegations in Paragraph 49.

50. IBM admits that, prior to 2024, the Power Systems sales personnel were generally divided into two groups, known as the Squad and Business Partner Specialists ("BPS"). Except as specifically admitted, IBM denies the allegations in Paragraph 50.

51. IBM admits that the Squad comprised sales and technical personnel responsible for covering a select group of large clients. Except as specifically admitted, IBM denies the allegations in Paragraph 51.

52. IBM admits that Plaintiff worked on the BPS team for Power Systems. Except as specifically admitted, IBM denies the allegations in Paragraph 52.

53. IBM admits BPS covered certain customers not covered by Squad. Except as specifically admitted, IBM denies the allegations in Paragraph 53.

54. Denied.

55. IBM admits that it made organizational changes to its sales organization, including structural changes as well as changes in territories,

10

and that these changes took effect in 2024. Except as specifically admitted, IBM denies the allegations in Paragraph 55.

56. IBM admits that it made organizational changes to its sales organization, including transitioning certain customer accounts to a newly created Digital team, and that these changes took effect in 2024. IBM further admits that Plaintiff and BPS seller Mamie Ryant covered clients in a territory comprising Maryland, Virginia, Delaware, West Virginia, and Washington D.C. Except as specifically admitted, IBM denies the allegations in Paragraph 56.

57. IBM admits that, in 2024, Power Systems Technical Manager Joy Lee oversaw technical specialists for the Squad and BPS territory in the National Market Southeast Region. Except as specifically admitted, IBM denies the allegations in Paragraph 57.

58. IBM admits that, in 2025, Lee became the technical manager for only the Squad, and Chris Kennedy, who previously was Plaintiff's peer, became the technical sales manager for BPS and Digital. Except as specifically admitted, IBM denies the allegations in Paragraph 58.

59. Denied.

60. Denied.

61. Denied.

11

62. Denied.

63. Denied.

64. Denied.

65. IBM admits that Plaintiff's sales plan in the first quarter of 2024 included, among other things, the components listed in Paragraph 65. Except as specifically admitted, IBM denies the allegations in Paragraph 65.

66. IBM admits that Plaintiff's 2024 sales plan included a quota for new client acquisition. Except as specifically admitted, IBM denies the allegations in Paragraph 66.

67. IBM lacks sufficient information or knowledge to admit or deny Plaintiff's personal beliefs about the potential for Power Systems sales to the eligible new accounts in his territory. IBM denies the remaining allegations in Paragraph 67.

68. IBM admits that in or about April 2024, it changed the incentive pay structure for Power Virtual Server sales. Except as specifically admitted, IBM denies the allegations in Paragraph 68.

69. Denied.

70. Denied.

71.     IBM admits that Plaintiff attended one or more meetings in 2024 with Michael Watt and Mamie Ryant. Except as specifically admitted, IBM denies the allegations in Paragraph 71.

72.     Denied.

73.     IBM admits, upon information and belief, that Watt relayed to Plaintiff and Ryant that sales quotas and territory assignments would be revisited in the normal cycle at the outset of 2025. Except as specifically admitted, IBM denies the allegations in Paragraph 73.

74.     IBM admits it maintains performance reviews regarding Plaintiff and that these reviews speak for themselves as to their contents. Except as specifically admitted, IBM denies the allegations in Paragraph 74.

75.     Denied.

76.     Denied.

77.     IBM admits Plaintiff reported the death of a family member in March 2025. IBM lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 77 and therefore denies the same.

78.     IBM admits Kennedy expressed sympathy and encouraged Plaintiff to take time away from work as needed following that event. Except as specifically admitted, IBM denies the allegations in Paragraph 78.

79. IBM admits, upon information and belief, that Plaintiff took time off work after the death of a family member in March 2025. IBM lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 79 and therefore denies the same.

80. IBM admits that it maintains leave policies that speak for themselves as to their contents. Except as specifically admitted, IBM denies the allegations in Paragraph 80.

81. IBM admits that Plaintiff informed his manager that he would return to work on March 31, 2025. IBM lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 81 and therefore denies the same.

82. IBM admits, upon information and belief, that on or about April 10, 2025, Plaintiff traveled to a customer location in Florida. Except as specifically admitted, IBM denies the allegations in Paragraph 82.

83. IBM admits, upon information and belief, that on or about April 22, 2025, Plaintiff traveled to Atlanta, Georgia to attend an IBM sales planning meeting. Except as specifically admitted, IBM denies the allegations in Paragraph 83.

84. Admitted.

14

85. IBM admits Plaintiff received a PIP on or about May 9, 2025. Except as specifically admitted, IBM denies the allegations in Paragraph 85.

86. IBM admits Plaintiff was placed on a PIP on or about May 9, 2025. Except as specifically admitted, IBM denies the allegations in Paragraph 86.

87. Denied.

88. IBM admits that the PIP stated that it would remain in place until June 30, 2025. Except as specifically admitted, IBM denies the allegations in Paragraph 88.

89. IBM admits that the PIP included certain performance objectives that speak for themselves as to their contents. Except as specifically admitted, IBM denies the allegations in Paragraph 89.

90. Denied.

91. IBM admits that it made a new product announcement on July 8, 2025. Except as specifically admitted, IBM denies the remaining allegations in Paragraph 91.

92. Denied.

93. IBM admits that Plaintiff was paired to work with BPS seller Mamie Ryant. Except as specifically admitted, IBM denies the allegations in Paragraph 93.

15

94. Denied.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

99. IBM admits that Mark Roper, a Squad technical specialist who reported to Lee in 2024, was not placed on a PIP for his 2024 performance. Except as specifically admitted, IBM denies the allegations in Paragraph 99.

100. Denied.

101. IBM admits that Glenda Morales was placed on a PIP for her 2024 performance and that she successfully met the PIP objectives. Except as specifically admitted, IBM denies the allegations in Paragraph 101.

102. Denied.

103. Denied.

104. Denied.

105. Denied.

106. Denied.

107. Denied.

108. Denied.

16

109. IBM admits Plaintiff continued working during the PIP period. Except as specifically admitted, IBM denies the allegations in Paragraph 109, including any allegations of discrimination.

110. IBM admits Plaintiff continued working during the PIP period. Except as specifically admitted, IBM denies the allegations in Paragraph 110.

111. IBM admits Plaintiff continued working during the PIP period. Except as specifically admitted, IBM denies the allegations in Paragraph 111.

112. IBM admits Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination (EEOC Charge No. 433-2025-04350), which speaks for itself as to its contents, and that a right-to-sue notice issued on December 23, 2025. Except as specifically admitted, IBM denies the allegations of Paragraph 112.

113. IBM admits that, in or about September 2025, Plaintiff filed with the EEOC a Charge of Discrimination (EEOC Charge No. 433-2025-04350). Except as specifically admitted, IBM denies the allegations of Paragraph 113.

114. IBM admits that, on December 23, 2025, the EEOC issued a Dismissal and Notice of Right to Sue regarding Plaintiff's Charge, which shows that it was copied to Plaintiff's counsel. IBM lacks sufficient knowledge or information to admit or deny Plaintiff's allegations about when his attorneys received the right-to-sue-notice and therefore denies the same.

17

115.  IBM admits that Plaintiff filed his Complaint in this lawsuit within 90 days after the EEOC issued its right-to-sue-notice. Except as specifically admitted, IBM denies the allegations of Paragraph 115.

## CLAIMS FOR RELIEF

## First Claim (ADEA)

116.  IBM incorporates its responses above as if fully set forth herein.

117.  IBM admits, upon information and belief, that Plaintiff was 61 years of age in July 2025, when his employment with IBM ended. IBM denies the remaining allegations in Paragraph 117, including, but not limited to, any allegation of discriminatory conduct.

118.  Denied.

119.  Denied.

120.  IBM admits that Plaintiff's performance records reflect FY 2023 target and attainment figures substantially similar to those alleged in Paragraph 120. Except as specifically admitted, IBM denies the allegations in Paragraph 120.

121.  IBM admits that Plaintiff received in August 2024 an equity award under its Long-Term Performance Plan. Except as specifically admitted, IBM denies the allegations in Paragraph 121.

18

122. IBM admits that Plaintiff's performance records reflect that he helped achieve PowerVS sales in 2023 and 2024. Except as specifically admitted, IBM denies the allegations in Paragraph 122.

123. IBM admits that it maintains performance reviews regarding Plaintiff and that these reviews speak for themselves as to their contents. Except as specifically admitted, IBM denies the allegations in Paragraph 123.

124. Denied.

125. Denied.

126. IBM admits that it made a new product announcement on July 8, 2025. Except as specifically admitted, IBM denies the remaining allegations in Paragraph 126.

127. Denied.

128. Denied.

129. Denied.

130. Denied.

131. Denied.

132. Denied.

133. Denied.

134. Denied.

19

## Second Claim (Wrongful Discharge in Violation of North Carolina Public Policy)

135. IBM incorporates its responses above as if fully set forth herein.

136. This paragraph states a legal conclusion regarding North Carolina law and therefore does not require a response. To the extent a response is required, IBM denies any characterization of North Carolina law that is incomplete, inaccurate, or inconsistent with controlling authority.

137. This paragraph states a legal conclusion regarding North Carolina law and therefore does not require a response. To the extent a response is required, IBM denies any characterization of North Carolina law that is incomplete, inaccurate, or inconsistent with controlling authority.

138. This paragraph states a legal conclusion regarding North Carolina law and therefore does not require a response. To the extent a response is required, N.C. Gen. Stat. § 143-422.2 speaks for itself, and IBM denies any characterization of North Carolina law that is incomplete, inaccurate, or inconsistent with controlling authority.

139. This paragraph states a legal conclusion regarding North Carolina law and therefore does not require a response. To the extent a response is required, Section 1 of the North Carolina Constitution speaks for itself, and IBM denies any characterization of North Carolina law that is incomplete, inaccurate, or inconsistent with controlling authority.

20

140. IBM admits, upon information and belief, that Plaintiff was 61 years of age in May and July 2025, when the PIP and termination took effect. Except as specifically admitted, IBM denies the allegations in Paragraph 140.

141. Admitted.

142. Denied.

143. Denied.

144. Denied.

145. Denied.

Except as expressly admitted, Defendant denies any allegations contained in the Complaint. The remainder of Plaintiff's Complaint contains a Demand for Relief, which requires no response from Defendant. Defendant, however, denies that Plaintiff is entitled to any of the remedies or relief requested.

Having fully answered the Complaint, Defendant sets forth the following further defenses:

## SECOND DEFENSE

To the extent that Plaintiff's Complaint fails to state a claim upon which relief can be granted, such claim or claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

21

## THIRD DEFENSE

Plaintiff's claims are barred by the applicable statute(s) of limitations to the extent those claims are predicated in whole or in part upon events occurring outside the relevant period(s) of limitations.

## FOURTH DEFENSE

To the extent any events alleged in connection with Plaintiff's claims under the ADEA occurred more than 180 days prior to the filing of Plaintiff's charge of discrimination with the EEOC, such events are untimely and are not properly asserted in connection with that claim; nor is Plaintiff entitled to relief under the ADEA for any events which occurred more than 180 days prior to the filing of his EEOC Charge.

## FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff failed to comply fully with the administrative prerequisites for bringing a civil action under the ADEA, including timely filing and exhaustion of administrative remedies.

## SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent some or all of the issues and allegations in the Complaint exceed the scope of, or are

22

not reasonably related to, the allegations made in any applicable administrative proceedings.

## SEVENTH DEFENSE

Plaintiff's claims under the ADEA are barred to the extent Plaintiff failed to comply with the administrative procedures or exhaust his administrative remedies with the EEOC for processing his charge of discrimination.

## EIGHTH DEFENSE

Plaintiff's claims are barred to the extent the conduct alleged does not constitute an adverse employment action within the meaning of the ADEA or applicable law.

## NINTH DEFENSE

IBM's actions regarding Plaintiff were undertaken in good faith and in compliance with applicable law and internal policies.

## TENTH DEFENSE

IBM is not liable because Plaintiff cannot establish that age was the "but-for" cause of any challenged employment decision.

23

## ELEVENTH DEFENSE

IBM is not liable because its actions regarding Plaintiff were based on legitimate, non-discriminatory business reasons, including performance-related considerations and business judgment.

## TWELFTH DEFENSE

Plaintiff's claims are barred to the extent that there was no causal connection between the events alleged in the Complaint and any damages Plaintiff claims to have suffered.

## THIRTEENTH DEFENSE

To the extent Plaintiff seeks punitive damages or compensatory damages for emotional distress, such remedies are unavailable under the ADEA.

## FOURTEENTH DEFENSE

Plaintiff's claim for liquidated damages under the ADEA is barred because IBM did not engage in a willful violation of the ADEA.

## FIFTEENTH DEFENSE

Plaintiff's claims for back pay, front pay, and other monetary relief are barred or limited, in whole or in part, to the extent Plaintiff failed to exercise reasonable diligence to mitigate damages.

24

## SIXTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent the doctrines of waiver, estoppel, laches, and/or unclean hands apply to the facts of this case.

## SEVENTEENTH DEFENSE

Plaintiff's claims are barred or limited to the extent that the discovery of after-acquired evidence would have independently justified the challenged employment action(s).

## EIGHTEENTH DEFENSE

Plaintiff's recovery, if any, is limited by applicable statutory and constitutional provisions governing damages and remedies, including limitations applicable to any request for punitive damages under North Carolina law.

## NINETEENTH DEFENSE

Plaintiff's North Carolina public-policy claim is barred to the extent it is premised on a statute or public-policy provision that does not create a private right of action and/or to the extent it fails to satisfy the elements required for a wrongful discharge claim under North Carolina law.

25

## TWENTIETH DEFENSE

Plaintiff's claim for punitive damages under North Carolina law is barred because IBM did not engage in discriminatory or retaliatory practices with malice or with reckless indifference to the rights of Plaintiff, and it undertook good faith efforts to develop and enforce applicable anti-discrimination and anti-retaliation policies and to otherwise comply with its obligations under governing law.

## TWENTY-FIRST DEFENSE

Plaintiff's claim for punitive damages under North Carolina law is barred because Plaintiff cannot establish that IBM acted with fraud or malice, or that it engaged in willful or wanton conduct. *See* N.C. Gen. Stat. § 1D-15.

## TWENTY-SECOND DEFENSE

Any recovery of punitive damages under North Carolina state law is limited by the provisions of N.C. Gen. Stat. § 1D-25.

## TWENTY-THIRD DEFENSE

Because discovery has not yet occurred, IBM reserves the right to amend this Answer and assert additional defenses, affirmative or otherwise, as they become evident through discovery or further investigation.

WHEREFORE, IBM respectfully prays that the Court enter a judgment providing that:

26

1. The Court dismiss this action in its entirety with prejudice.

2. Plaintiff have or recover nothing of Defendant;

3. Plaintiff be awarded no form of legal or equitable relief;

4. The costs of this action and Defendant's reasonable attorneys' fees be assessed against Plaintiff as may be allowed by law; and

5. The Court award such other and further relief as just and proper.

This the 27th day of March 2026.

/s/ Jill S. Stricklin
Jill S. Stricklin
N.C. Bar No. 20145
**PIERSON FERDINAND LLP**
550 N. Liberty Street, Suite 166
Winston-Salem, NC 27101
Phone: 336-800-5955
Email: jill.stricklin@pierferd.com

/s/ Noel J. Meza
Noel J. Meza
CA Bar No. 331169
**PIERSON FERDINAND LLP**
3200 Fourth Avenue, Suite 205
San Diego, CA 92103
Phone: 619-870-9477
Email: noel.meza@pierferd.com

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed **DEFENDANT'S ANSWER TO COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Matthew E. Lee
Jeremy R. Williams
Eric G. Steber
**LEE SEGUI PLLC**
900 W. Morgan Street
Raleigh, NC 27603
855-496-7500
Email: mlee@leesegui.com
Email: jwilliams@leesegui.com
Email: esteber@leesegui.com

This the 27th day of March 2026.

*/s/ Noel J. Meza*
Noel J. Meza
CA Bar No. 331169
**PIERSON FERDINAND LLP**
3200 Fourth Avenue, Suite 205
San Diego, CA 92103
Phone: 619-870-9477
Email: noel.meza@pierferd.com

*Attorneys for Defendant*